## APPEAL OF PENNSYLVANIA CENTRAL BREWING CO.

Docket No. 1537. Promulgated November 23, 1927.

*J. Marvin Haynes, Esq., R. H. Montgomery, Esq., Charles P. O'Malley, Esq., C. J. McGuire, Esq., Matthew E. O'Brien, Esq.,*

Matthew II. O'Brien, Esq., L. E. Renard, Esq., and J. P. W. Hein-bockel, C. P. A., for the petitioner.

John D. Foley, Esq., and B. G. Simpich, Esq., for the Commissioner.

267

OPINION.

MARQUETTE: The first question presented for decision here is what amount, if any, the petitioner is entitled to include in its invested capital for the years 1919 and 1920, on account of good will acquired from the 12 brewing companies under the circumstances set forth in the findings of fact. The Commissioner has refused to permit the petitioner to include any amount in invested capital on account of the good will so acquired, on the ground that it had no value.

The evidence discloses that the petitioner acquired all the assets, including good will, of 12 breweries, paying therefor bonds, preferred stock and common stock, each of the par value of $2,800,000. That it acquired for these stocks and bonds, assets of substantial value, is evidenced by the fact that the bonds immediately after they were issued sold for par, and that the preferred stock and common stock sold for $50 and $20 per share, respectively. However, no amount of stock or bonds was issued specifically for tangibles or intangibles, and it is therefore necessary, if we are to arrive at a solution of the question before us, to determine the value of the two classes of assets from the evidence that has been presented. While the issue here is as to the value of the intangibles, we must, in view of the fact that the petitioner and the Commissioner can not agree as to the value of either the tangibles or intangibles, first ascertain the value of the tangibles. We are satisfied from the evidence presented that when the petitioner acquired the assets of the 12 breweries, the tangibles included therein had a fair market value of at least $1,505,684.83. While the evidence as to that value consists principally of an appraisal made in the year 1925, the appraisal was a detailed and minute one made by competent men and based upon the original inventory of the assets under consideration. Retrospective appraisals should be carefully scrutinized, and are often not of great probative value, but we are of the opinion that the appraisals involved herein, considered with the other evidence tending to establish the value of the assets, shows with reasonable certainty that the tangible assets which the petitioner acquired in exchange for its stocks and bonds, had a value of at least the amount set forth, and we so hold.

Having determined the value of the tangible assets we can, by taking the earnings of the 12 breweries prior to the time they were acquired by the petitioner, and allocating them to tangibles and intangibles in accordance with the rules laid down in prior decisions of this Board, determine a value for the intangible assets. In the *Appeal of Dwight & Lloyd Sintering Co.*, 1 B. T. A. 179, and *Appeal of St. Louis Screw Co.*, 2 B. T. A. 649, the Board had before it the question of determining the value of a mixed aggregate of tangible and intangible property acquired by the taxpayer in exchange for stock and the assumption of certain liabilities. In determining the value of the intangibles so acquired, it was necessary to capitalize the earnings of several years immediately prior to the date the taxpayers acquired the assets. It was held that an allowance should be made for a proper return on tangibles and that the average net earnings in excess of such return should be capitalized to determine the value of the intangibles. We think that the method so adopted is proper in the instant appeal. We do not, however, agree with the contention of the petitioner that, as in the *Appeal of Dwight & Lloyd Sintering Co.*, *supra*, the rates to be used should be 8 per cent on tangibles and 15 per cent on intangibles. In view of the nature of the petitioner's business, which was subject to the hazards common to all manufacturing enterprises, as well as those peculiar to itself, it appears that the rates of 10 per cent on tangibles and 20 per cent on intangibles, are proper here, and applying those rates we find that the good will acquired by the petitioner, under the circumstances set forth in the findings of fact, had a value of $2,202,-415.20 on October 1, 1897.

The net earnings which we have considered in reaching this conclusion are for the 3-year period ending June 30, 1897. While it would be desirable to have before us the earnings for a longer period, we are satisfied that the values we have found for both the tangible and intangible property acquired by the petitioner, are amply supported by the evidence.

Having found the values of the tangible and intangible assets acquired by the petitioner in exchange for its bonds and stock, we must next determine to what extent the value of the intangibles may be reflected in the petitioner's invested capital for the years 1919 and 1920. In the *Appeal of St. Louis Screw Co.*, *supra*, the facts were that the taxpayer acquired tangible and intangible property in exchange for stock and the assumption of certain liabilities. We there held that the value of the tangibles should be reduced by the amount of the liabilities; that the capital stock should be applied against the remaining tangibles and intangibles, according to the

cash value of each class of assets at the date of acquisition, and that the intangibles so paid in for stock should be included in invested capital subject to the limitations contained in section 326 (4) of the Revenue Act of 1918. Applying that rule here we must consider that the bonds were issued first for tangibles; that the bonds in excess of the value of the tangibles were issued for intangibles, and that the remainder of the intangibles were acquired for stock. We therefore find that in consideration of its bonds the petitioner acquired tangible property of the value of $1,505,684.83, and intangibles of the value of $1,294,315.17, and that for its captital stock it acquired intangibles of the value of $908,100.03. Under section 326 (a) (4) of the Revenue Act of 1918, intangible property paid in for stock prior to March 3, 1917, may be included in invested capital in an amount not exceeding:

(a) The actual cash value of such property at the time paid in,

(b) The par value of the stock or shares issued therefor, or

(c) In the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.

Of the three limitations prescribed, the value of the intangibles is the lowest here and it therefore follows that the petitioner is entitled to include in invested capital for the years 1919 and 1920, on account of the intangibles in question, the amount of $908,100.03.

The next question is whether the petitioner is entitled to any deduction from gross income for the years 1919 and 1920 as an allowance for the obsolescence of its good will. We have heretofore held in *Appeal of Manhattan Brewing Co.*, 6 B. T. A. 952, and *Appeal of Standard Brewing Co.*, 6 B. T. A. 980, that under the Revenue Act of 1918 a taxpayer is not entitled to any deduction from gross income on account of obsolescence of good will. Upon the authority of the decisions in those appeals the petitioner's claim for deductions from gross income on account of obsolescence of its good will is denied. See also *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626.

It appears from the evidence presented herein that, as set forth in the findings of fact the petitioner's earned surplus is understated on its books by the amount of $500,000. Earned surplus should, therefore, be adjusted accordingly.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

STERNHAGEN and MURDOCK dissent.